IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEAHTRA NICHOLE McRAE** : | |
| : | |
| : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **JOHNSON & JOHNSON** : | **PLAINTIFF'S COMPLAINT** |
| | **AND JURY DEMAND** |
| **ORTHO-McNEIL** : | |
| **PHARMACEUTICAL, INC.** : | |
| : | |
| **JOHNSON & JOHNSON PHARMACEUTICAL** : | |
| **RESEARCH AND DEVELOPMENT, LLC, f/k/a** : | |
| **R.W. JOHNSON PHARMACEUTICAL RESEARCH** : | |
| **INSTITUTE,** : | |
| : | |
| **Defendants.** : | |
| : | |

COMES NOW THE PLAINTIFF, DEAHTRA NICHOLE McRAE , by and through counsel, and files this Complaint seeking judgment against Defendants JOHNSON & JOHNSON, ORTHO-McNEIL PHARMACEUTICAL, INC., AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT (hereinafter "Defendants") and in support thereof states as follows:

<u>Parties</u>

1.    Plaintiff, Deahtra Nichole McRae, is a citizen of Maryland, currently residing at 12306 Brolass Road, Clinton, Maryland 20735.  At all times relevant to this lawsuit, Plaintiff resided in Maryland.

2.     Plaintiff was prescribed Defendants' Product, the Ortho Evra Birth Control Patch, in the District of Columbia. In addition, Plaintiff was diagnosed with deep vein thrombosis and pulmonary emboli in the District of Columbia and subsequently has continued to receive medical treatment in the District of Columbia.

3.     Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant Johnson & Johnson is a resident and citizen of New Jersey. Defendant Johnson & Johnson is the parent company of Defendant Ortho-McNeil Pharmaceutical, Inc. and Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC.

4.     At all times relevant, Defendant Johnson & Johnson was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product Ortho Evra Birth Control Patch in the District of Columbia.

5.     Defendant Ortho-McNeil Pharmaceutical, Inc. is a Delaware corporation with its principal place of business at 1000 US Hwy. 2002, Raritan, New Jersey 08869-0602. Defendant Ortho-McNeil Pharmaceutical, Inc. is a resident and citizen of both Delaware and New Jersey. Defendant Ortho-McNeil Pharmaceutical, Inc. is a subsidiary of Johnson & Johnson.

6.     At all times relevant, Defendant Ortho-McNeil was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product the Ortho Evra Birth Control Patch in the District of Columbia.

7.     Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a New Jersey limited liability company with its principal place of business at 920 Rte. 202 South,

2

Raritan, New Jersey 08869-1420. Defendant Ortho-McNeil Pharmaceutical, Inc. is the sole member of Johnson & Johnson Pharmaceutical Research and Development, LLC, and therefore, Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a resident and citizen of both Delaware and New Jersey. Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a wholly owned subsidiary of Johnson & Johnson, and was previously known as R.W. Johnson Pharmaceutical Research Institute.

8.      At all times relevant, Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product the Ortho Evra Birth Control Patch.

### Jurisdiction and Venue

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because it is an action between citizens of different states.

10.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 in that it arises under the laws of the United States.

11.     The Court has personal jurisdiction over these Defendants pursuant to District of Columbia's Long-Arm Statute, D.C. Code §13-423(a)(4) where Plaintiff suffered a tortious injury within the District of Columbia, and Defendants regularly do or solicit business, engage in other persistent course of conduct, or derive substantial revenue from goods used or consumed in the District of Columbia, including their Product the Ortho Evra Birth Control Patch.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391. Plaintiff was prescribed Defendants' Product, the Ortho Evra Birth Control Patch, in the District of Columbia.  In addition,

Plaintiff was diagnosed with deep vein thrombosis and pulmonary emboli in the District of Columbia and subsequently has continued to receive medical treatment in the District of Columbia. At all relevant times herein, Defendants were in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling its product, the Ortho Evra Birth Control Patch in the District of Columbia. At all times relevant hereto, Defendants designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce and District of Columbia the aforementioned prescription drug. Defendants do substantial business in the District of Columbia and within this Federal District, advertised their product, received substantial compensation and profits from sales of the Ortho Evra Birth Control Patch, and made material omissions and misrepresentations and breaches of warranties in the District of Columbia.

13.    Jurisdiction over the Defendant is proper under the United States Constitution as well as under D.C. Code Ann. §13-334(a) (2001).

14.    In addition, jurisdiction and venue are proper under D.C. Code Ann. §13-423 (a) (2001).

**FACTUAL BACKGROUND**

15.    Plaintiff Deahtra McRae suffered from deep vein thrombosis and pulmonary emboli at the age of 34 as a direct result of her use of the Ortho Evra Birth Control Patch.

16.    Defendants market the Ortho Evra Birth Control Patch as the first and only once-a-week birth control patch.

17.    Defendants market the Ortho Evra Birth Control Patch as providing the same efficacy as birth control pills in preventing pregnancy, but with more convenience than birth control pills because it is worn on the skin for three consecutive weeks, with the fourth week being "patch free."

18.    Defendants claim that the Ortho Evra Birth Control Patch helps prevent pregnancy the same way birth control pills do by preventing ovulation, by thickening the cervical mucus, and by changing the endometrium to reduce the chance of implantation.

19.    Unlike birth control pills, the Ortho Evra Birth Control Patch birth control patch is transdermal, meaning continuous levels of the hormones norelgestromin and ethinyl estradiol (progestin and estrogen, respectively) are delivered through the skin into the bloodstream.

20.    In response to the question of whether there are any side effects associated with the Ortho Evra Birth Control Patch, Defendants claim that the most frequent adverse event leading to discontinuation include nausea and/or vomiting, application site reaction, breast symptoms, headache, and emotional lability.

21.    Defendants failed to warn consumers and/or their health care providers that the Ortho Evra Birth Control Patch is more likely to cause blood clots than oral contraceptives, particularly those classified as second generation oral contraceptives.

22.    Indeed, upon information and belief, adverse event records from the Food and Drug Administration show that a significantly higher number of women using the birth control patch reportedly suffered injury or death due to venous thromboembolism, compared to women using oral contraceptives.    Further, Defendants own clinical trials revealed a higher rate of venous thromboembolism in women on the patch compared to those using oral contraceptives in the study.

23.    On November 10, 2005, Defendants updated the prescribing information for Ortho Evra Birth Control Patch to include a new warning and provide additional information on the differences between a weekly transdermal delivery system and a daily oral delivery system.    The new warning states:

> The pharmacokinetic (PK) profile for the ORTHO EVRA® patch is different from the PK profile for oral contraceptives in that it has higher steady state

concentrations and lower peak concentrations. AUC and average concentration at steady state for ethinyl estradiol (EE) are approximately 60% higher in women using ORTHO EVRA® compared with women using an oral contraceptive containing EE 35 µg. In contrast, peak concentrations for EE are approximately 25% lower in women using ORTHO EVRA®. Inter-subject variability results in increased exposure to EE in some women using either ORTHO EVRA® or oral contraceptives. However, inter-subject variability in women using ORTHO EVRA® is higher. In general, increased estrogen exposure may increase the risk of adverse events. However, it is not known whether there are changes in the risk of serious adverse events based on the differences in pharmacokinetic profiles of EE in women using ORTHO EVRA® compared with women using oral contraceptives containing 35 µg of EE. (See CLINICAL PHARMACOLOGY, Transdermal versus Oral Contraceptives).

24.    The new label dated November 10, 2005 also contains a new section entitled "Transdermal versus Oral Contraceptives." In a study of 32 healthy female volunteers, it was found that

[The] overall exposure for NGMN [norelgestromin] and EE [ethinyl estradiol] (AUC and $C_{ss}$) was higher in subjects treated with ORTHO EVRA® for both Cycle 1 and Cycle 2, compared to that for the oral contraceptive, while $C_{max}$ values were higher in subjects administered the oral contraceptive. Under steady-state conditions, $AUC_{0-168}$ and $CC_{ss}$ for EE were approximately 55% and 60% higher, respectively, for the transdermal patch, and the $C_{max}$ was about 35% higher for the oral contraceptive, respectively. Inter-subject variability (%CV) for the PK parameters following delivery from ORTHO EVRA® was higher relative to the variability determined from the oral contraceptive.

25.    The November 10, 2005 label also provides that in the study of 32 healthy female volunteers, the percent change in systemic estrogenic activity related to the Sex Hormone Binding Globulin (SHBG) was higher for ORTHO EVRA® users compared to women taking the oral contraceptive.

26.    As a result of Defendants' claim regarding the effectiveness and safety of the Ortho Evra Birth Control Patch, Plaintiff Deahtra McRae's medical provider at the George Washington Faculty Medical Associates, located in the District of Columbia, prescribed and Plaintiff began using the Ortho Evra Birth Control Patch in approximately January of 2003. Plaintiff Deahtra McRae used

the Ortho Evra patch for approximately 9 months before suffering from serious deep vein thrombosis and pulmonary emboli.

27.    In June of 2003, Plaintiff Deahtra McRae began suffering from left calf pain. At that time, she was treated medically for tendonitis by her doctor at the George Washington Faculty Medical Associates, located in the District of Columbia. Plaintiff McRae's condition continued to worsen, and she returned to the George Washington Faculty Medical Associates on or about September 15, 2003.

28.    Plaintiff McRae's medical providers at the George Washington Faculty Medical Associates immediately sent her to the Emergency Room at George Washington University Hospital (GWUH) for emergent care. GWHU is also located in the District of Columbia.

29.    On or about September 15, 2003, Plaintiff Deahtra McRae was admitted to GWUH. Physicians at GWUH diagnosed Plaintiff with deep vein thrombosis and pulmonary emboli. Plaintiff was treated at GWUH with Lovenox and Coumadin.

30.    Plaintiff was discharged from GWUH on or about September 17, 2003 on Lovenox and Coumadin. Plaintiff is required to continue Coumadin therapy for the rest of her life.

31.    As a direct and proximate result of using the Ortho Evra Birth Control Patch, Plaintiff Deahtra McRae suffered the serious and permanent physical injuries described above at the age of 34.

32.    Further, Plaintiff McRae is now prohibited from using oral contraceptives and is more inclined to experience future medical complications as a result of the injuries sustained during her use of the Ortho Evra Birth Control Patch.

33.    Prior to September, 2003 Defendants knew or should have known that use of the Ortho Evra Birth Control Patch created a higher risk of blood clots, heart attacks, thrombosis, pulmonary embolism, and death than oral contraceptives, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

34.    Therefore, at the time Plaintiff used the Ortho Evra Birth Control Patch from approximately January 2003 through September 2003, Defendants knew or should have known that the use of the Ortho Evra Birth Control Patch created an increased risk to consumers of serious personal injury, including heart attack, deep vein thrombosis, pulmonary embolism, thrombi, and even death.

35.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of the Ortho Evra Birth Control Patch, Defendants failed to warn Plaintiff and/or her health care providers of said serious risks before she used the product.

36.    Had Plaintiff Deahtra McRae and/or her heath care providers known the risks and dangers associated with the Ortho Evra Birth Control Patch, she would not have used the Product and would not have suffered the serious effects of deep vein thrombosis and pulmonary emboli at the age of 34.

37.    As a direct and proximate result of Plaintiff's use of the Ortho Evra Birth Contol Patch, Plaintiff has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering from deep vein thrombosis and pulmonary emboli, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will effect her throughout her lifetime.

38.    Further, as a direct and proximate result of Plaintiff's use of the Ortho Evra Birth Control Patch, Plaintiff suffered significant mental anguish and emotional distress, was in fear for her life, and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

39.    Plaintiff Deahtra McRae has also incurred medical expenses and other economic harm including lost earnings, and will continue to incur expenses and lost earnings in the future, as a direct and proximate result of her use of the Ortho Evra Birth Control Patch.

## General Allegations Concerning Plaintiff and Her Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states as follows:

40.    In approximately January of 2003, Plaintiff Deahtra McRae, was prescribed Defendants' Ortho Evra Birth Control Patch by her obstetrician/gynecologist Letitia Carlson, M.D. of the George Washington Faculty Medical Associates, located in the District of Columbia.

41.    With no contributory negligence on her part, Deahtra McRae used the Ortho Evra Birth Control Patch, beginning in approximately January 2003, and continuing through September 2003.

42.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Deahtra McRae was diagnosed by the George Washington University Hospital, located in the District of Columbia, as having deep vein thrombosis and pulmonary emboli on or about September 15, 2003.

43.    As a direct and proximate result of the incident, Deahtra McRae underwent much physical pain, suffering, mental anguish, emotional distress, and incurred expenses for medical care and treatment.

44.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Deahtra McRae required, and continues to require, reasonable and necessary health care, attention and services, and incurred, and continues to incur, medical, incidental, and service expenses pertaining to her injuries.

## Count I – Negligence

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

45.    At all times material to this lawsuit, Defendants owed Deahtra McRae duties

of reasonable care and safety.

46.    Defendants' duties included, but were not limited to, carefully and

properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling,

and/or distributing the Ortho Evra Birth Control Patch into the stream of commerce, and providing

warnings with regard to the Product.

47.    Defendants negligently and carelessly breached the above-described

duties to Deahtra McRae by committing negligent acts and/or omissions including but not limited to:

(A)    Defendants failed to use ordinary care in designing, testing, and manufacturing

the Product so as to avoid the high risk to users of unreasonable, dangerous side-

effects, some of which are fatal, such as deep vein thrombosis, pulmonary

embolism, stroke and heart attack.

(B)    Defendants failed to accompany the Product with adequate warnings that would

alert consumers and other users to the potential adverse side effects associated

with the use of the Product and the nature, severity and duration of such adverse

effects;

(C)    Defendants failed to conduct adequate pre-clinical testing and post-marketing

surveillance to determine the safety and side effects of the Product;

(D)    Defendants failed to warn Deahtra McRae prior to actively encouraging the sale

of the Product, either directly or indirectly, orally or in writing, about the

possibility of sustaining a life-threatening injury as a result of the Product's use;

(E)    Defendants continued to promote the safety of the Product, while downplaying

any risks, even after Defendants knew of the risk of deep vein thrombosis,

pulmonary embolism, stroke and heart attack; and

10

(F)     Defendants were otherwise careless or negligent.

48.     Although Defendants knew or should have known the Ortho Evra Birth Control Patch caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market the Product to consumers, including Deahtra McRae, when there were safer contraceptive methods.

49.     In addition, Defendants had a legal duty to comply with the U.S. Food, Drug and Cosmetic Act, U.S. Code § 21 USC §301, et seq., and regulations promulgated thereunder.

50.     Defendants negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v)(Labeling); 21 CFR § 1.2 (a) (Labeling); 21 CFR 600.80 (Postmarketing reporting of Adverse experiences); 21 CFR §314.50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses.  The violations of those and other statutes and regulations constitute negligence per se.

51.     Defendants knew or should have known that consumers, like Deahtra McRae, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

52.     Through their negligent acts and/or omissions, Defendants directly and proximately caused the injuries of Deahtra McRae.

### Count II – Strict Liability/Restatement of Torts §402A

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

53.     At all times material to this lawsuit, Defendants manufactured the Ortho Evra Birth Control Patch.

54.     At all times material to this lawsuit, Defendants engaged in the business of

selling the Ortho Evra Birth Control Patch in the District of Columbia.

55.    Defendants sold the Product, which was ingested by Deahtra McRae as alleged in this Complaint.

56.    The Product used by Deahtra McRae was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to consume it. In addition, the Product was dangerous to the extent beyond that which could reasonably be contemplated by Deahtra McRae, and any benefit of the Product was far outweighed by the serious and undisclosed risks of its use.

57.    The Product used by Deahtra McRae was defective at the time it was sold by Defendants or left their control.

58.    The Product used by Deahtra McRae was expected to reach the user without substantial change in the condition in which it was sold.

59.    The Product used by Deahtra McRae reached her without substantial change in the condition in which it was sold.

60.    Deahtra McRae was a person who would reasonably be expected to use the Product.

61.    The defects in the Ortho Evra Birth Control Patch used by Deahtra McRae were a direct and proximate cause of the injuries and damages sustained by Deahtra McRae as set forth in this Complaint.

### Count III – Restatement of Torts §402B

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

62.    At all relevant times herein, Defendants were in the business of selling

12

the Ortho Evra Birth Control Patch.

63.     Through their actions and omissions in advertising, promoting, reporting to the
FDA, labeling, and otherwise, Defendants made public misrepresentations of material facts to, and/or
concealed material facts from consumers like Deahtra McRae, concerning the character, safety, and
effectiveness of the Product.

64.     Those public misrepresentations and omissions include, but are not limited to
those set forth in the general allegations section of this Complaint. Those false representations and
omissions include but are not limited to the following:

> (A)     Defendants failed to disclose that sufficient pre-clinical and clinical testing
> and adequate post-marketing surveillance to determine the safety and side
> effects of the Product had not been done;
>
> (B)     Defendants failed to timely disclose, and/or intentionally concealed, the
> interim and final results of studies showing that use of the Ortho Evra Birth
> Control Patch increased the risk for blood clots, deep vein thrombosis,
> pulmonary embolism, stroke, heart attack, and death; and
>
> (C)     Defendants failed to include adequate warnings with the Product about the
> potential and actual risks and the nature, scope, severity, and duration of any
> serious side-effects of the Product, including without limitation, the risk of deep
> vein thrombosis and pulmonary emboli.

65.     Defendants were obligated to disclose the foregoing risks, but failed to adequately and
timely do so even after they were in possession of information concerning those risks.

66.     In the alternative, Defendants failed to exercise reasonable care in ascertaining the
accuracy of the information regarding the safe use of the Product, failed to disclose facts indicating

that the Product could cause blood clots, deep vein thrombosis, pulmonary embolism, stroke, heart attack and/or death, and otherwise failed to exercise reasonable care in communicating the information concerning the Product to Deahtra McRae, and/or concealed facts which were known to Defendants.

67.    Deahtra McRae was not aware of the falsity of the foregoing representations, nor was she aware that material facts concerning the Product had been concealed or omitted. In reliance upon Defendants' misrepresentations, Deahtra McRae was induced to and did purchase the Product and did use the Product. If Deahtra McRae had known the true facts concerning the risks of the use of the Product, in particular, the risk of deep vein thrombosis and pulmonary emboli, she would not have taken the Product.

68.    Deahtra McRae's reliance upon Defendants' misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning the Product, while Deahtra McRae was not in a position to know the true facts, and because Defendants aggressively marketed the use of the Product and concomitantly downplayed the risks in its use, thereby inducing Deahtra McRae to use this product in lieu of other, safer contraceptive products. At all times relevant, Defendants' corporate officers, directors and/or managing agents knew of and ratified the acts of Defendants, as alleged herein.

69.    As a direct and proximate result of Deahtra McRae's reliance on Defendants' misrepresentations concerning the risks and benefits of the Ortho Evra Birth Control Patch, Deahtra McRae suffered and her family continues to suffer from the injuries and damages as set forth in this Complaint.

### Count IV – Fraud

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

70.     Defendants intentionally, willfully, or recklessly concealed and misrepresented past and present facts to consumers and users, including Deahtra McRae, which they had a duty to disclose.

71.     The facts concealed and misrepresented include, but are not limited to, those set forth in the General Allegations section of this Complaint.

72.     Each of the facts concealed and misrepresented was material.

73.     Defendants concealed and misrepresented material facts to the consuming public with the intent that the consuming public, like Deahtra McRae, would take a course of action that it would otherwise not have taken if it had been informed of the actual facts known to Defendants, including the totality of the risks associated with the use of the Product.

74.     Deahtra McRae took such action relying on the assumption that the undisclosed facts did not exist and/or were different than they actually were.

75.     The reliance of Deahtra McRae was justified.

76.     As a result of Deahtra McRae's reliance on the incomplete and inaccurate information communicated by Defendants and her assumption that the non-disclosed facts about the risks associated with the use of the Ortho Evra Birth Control Patch did not exist, Deahtra McRae suffered the injuries and damages alleged in this Complaint.

## Count V – Express Warranties

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

77.     The Ortho Evra Birth Control Patch, which was designed, tested, and manufactured by Defendants, and distributed, promoted and sold by Defendants, was expected to, and did, reach Deahtra McRae without a substantial change in its condition.

78.     Defendants, through their advertising and promotional materials, expressly warranted that the Product was safe for the use for which it was intended, namely as a method of contraception.

15

79.    Defendants breached said express warranties in that the Product was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, deep vein thrombosis and pulmonary emboli.

80.    Deahtra McRae relied to her detriment on the express warranties of Defendants.

81.    As a direct and proximate result of Defendants' breach of express warranties, Deahtra McRae suffered and her family continues to suffer from the injuries and damages set forth in this Complaint.

### Count VI – Implied Warranties

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

82.    The Ortho Evra Birth Control Patch, which was designed, tested, and manufactured by Defendants, and distributed, promoted and sold by Defendants, was expected to, and did, reach Deahtra McRae without a substantial change in its condition.

83.    Defendants, through their advertising and promotional materials, impliedly warranted that the Product was safe for the use for which it was intended, namely as a method of contraception.

84.    Defendants breached said implied warranties in that the Product was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, deep vein thrombosis and pulmonary emboli.

85.    Deahtra McRae relied to her detriment on the implied warranties of Defendants.

86.    As a direct and proximate result of Defendants' breach of implied warranties, Deahtra McRae suffered and her family continues to suffer from injuries and damages set forth in this Complaint.

16

## Count VII – Violation of the D.C. Deceptive Trade Practices Act

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

87.    Defendants and at all times herein mentioned were engaged in the business of the sale of    consumer goods in the District of Columbia, including the Ortho Evra Birth Control Patch.

88.    The aforesaid unfair and deceptive acts were done in violation of the following subsections of District of Columbia Unlawful Trade Practices Act, D.C., Code §28-3904:

(a) misrepresentation that the drug products were of a particular quality;

(b) misrepresentation as to material facts which have the tendency to mislead;

(c) failure to state material facts which failure tends to mislead;

(d) offered for sale or distributed drug products in a condition which was inconsistent with that warranted by operation or requirement of federal law.

89.    As a direct and proximate result of such unfair and deceptive trade practices, Plaintiff suffered the aforesaid injuries and damages.

90.    Under said Act, Plaintiffs are entitled to treble damages or, in the alternative, punitive damages and reasonable attorney's fees, and any other relief which this court deems proper.

## Count VIII – Failure to Warn/Restatement of Torts § 388

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

91.    Defendants owed Deahtra McRae duties of reasonable care to adequately warn her of the risks associated with the use of the Ortho Evra Birth Control Patch.

92.     Defendants knew or reasonably should have known that the warnings provided to users of the Product regarding the risks associated with its use were incorrect and misleading in at least the following material respects:

(A)     The Ortho Evra Birth Control Patch was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

(B)     The Ortho Evra Birth Control Patch was defective due to inadequate post-marketing warnings or instructions because Defendants knew or should have known of the risks of injury from the Product, and they nonetheless failed to provide adequate warnings to users or consumers and continued aggressively to promote the Product.

93.     By failing to warn Deahtra McRae of the adverse health risks associated with the consumption of the Product, Defendants breached their duties to Deahtra McRae of reasonable care and safety.

94.     As a direct and proximate result of Defendants' failure to adequately warn Deahtra McRae of the risk of stroke associated with the use of the Ortho Evra Birth Control Patch, Deahtra McRae suffered and her family continues to suffer the injuries and damages set forth in this Complaint.

## Count IX – Intentional Infliction of Emotional Distress

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

95.     Defendants are liable to Plaintiff in that they intentionally and recklessly inflicted on them emotional distress by preventing public awareness of the risks associated with the consumption of the Ortho Evra Birth Control Patch.

18

96.    Defendants knew or should have known that their failure to fully and truthfully inform the public would cause severe and grave emotional distress in those users who ingested the Product and subsequently had an adverse event that caused them permanent, debilitating, and/or lethal injuries.

97.    Defendants' intentional decision to withhold and mis-report information concerning the high risk of developing a stroke was motivated by their desire to preserve sales of the Product.

98.    Defendants' knowing, intentional and conscious decision to withhold this information from the public and Deahtra McRae was outrageous and intolerable and offends the moral standards of this community.

99.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff suffered severe emotional distress, including but not limited to, depression and anxiety.

## Count X – Punitive Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

100.    The conduct of Defendants in designing, testing, manufacturing, and Defendants conduct in promoting, advertising, selling, marketing, and distributing the Ortho Evra Birth Control Patch, and in failing to warn Deahtra McRae and other members of the public of the dangers inherent in the use of the Ortho Evra Birth Control Patch, which were well known to Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequence, or of the rights and safety of others, particularly Deahtra McRae. Such conduct includes, but is not limited to, the following:

(A)    Upon information and belief, Defendants actually knew of the Product's defective nature, as set forth herein, but continued to design, manufacture, market, and sell the Product so as to maximize sales and profits at the

expense of the health and safety of the consuming public, including
Deahtra McRae, and in conscious disregard of the foreseeable harm
caused by the Product;

(B)     Defendants, who spends millions of dollars a year researching and
developing medicines, and aggressively marketed the Product, devoted far
less attention to conducting sufficient pre-clinical and clinical testing and
adequate post-marketing surveillance of this Product.

(C)     Defendants continued to promote the safety of the Product, while
providing to consumers no adequate warnings at all about the risk of blood
clots, deep vein thrombosis, pulmonary embolism, stroke, heart attack, and
death associated with the Product, even after Defendants knew of that risk
from adverse event reports, pre-clinical and clinical testing, and post-
marketing surveillance; and

(D)     Defendants had knowledge of safer alternative designs for their Product
and failed to substitute such a safer design.

### Count XI – Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states
that:

101.    WHEREFORE, Plaintiffs seek judgement in their favor against the defendant, as
follows:

a.      Severe and permanent physical and medical injuries and associated
disabilities;

20

b.    Severe past and future pain and suffering and mental anguish occasioned by the resulting injuries and disabilities;

c.    Loss of enjoyment of life;

d.    Increased risk of health problems;

e.    Loss of past and future economic losses and income;

f.    Past and future medical, rehabilitation, and life care expenses;

g.    Past and future medical monitoring;

h.    Past and future medical expenses;

i.    Any and all other damages to be shown at trial.

WHEREFORE, Plaintiff pray for judgment against Defendants JOHNSON & JOHNSON, ORTHO-McNEIL PHARMACEUTICAL, INC., AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT jointly and severally, on grounds set forth in Counts I through X, in the amount of Twenty Million Dollars ($20,000,000.00) in compensatory damages, and Twenty Million Dollars ($20,000,000.00) in punitive damages, plus costs and attorney's fees, and for such other and further damages and relief as this Court may deem appropriate.

By:    ASHCRAFT & GEREL, LLP

Michelle A. Parfitt , Esq.
ASHCRAFT & GEREL, LLP
2000 L Street NW, Suite 400
Washington, DC 20036
(202) 783-6400

21

## REQUEST FOR JURY TRIAL

Plaintiff, by their undersigned counsel, hereby requests a jury trial on all counts in this action.

Michelle A. Parfitt, Esq.